**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-01202-008-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Jeffrey Lee Moore, | |
| Defendant. | |

Defendant Jeffrey Lee Moore has filed an Amended Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 535). The Government has filed a Response thereto. (Doc. 538). No Reply has been filed, and the time to do so has expired. The Court now issues its opinion.

**I.   Background**

In 2016, the Defendant was arrested as a participant in a drug trafficking conspiracy, along with seven other people. (Doc. 168 at 1). As part of the conspiracy, the Defendant was accountable for twenty-two pounds of marijuana. (Doc. 449 at 15). During a lawful search of the Defendant's residence, law enforcement located a firearm that the Defendant was prohibited from possessing. (*Id.* at 11). After the Court severed Counts Two and Nine of the Second Superseding Indictment (Docs. 292; 168), the Defendant was convicted by a jury of Count Two, Conspiracy to Possess with Intent to Distribute Marijuana, on February 9, 2018. (*See* Doc. 393). Subsequently, the Defendant pleaded guilty to Count Nine, Felon in Possession of Firearm and Ammunition, on April 2, 2018. (*See* Doc. 457).

In his plea agreement, he admitted to the following facts:

> On October 2, 2016, I, Jeffrey Lee Moore, was residing at 2441 E. Wood St., Apt. 1 in Phoenix, AZ. On that date, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed a search warrant at my residence. During the search, ATF agents located my Glock, Model: 21C, .45 caliber pistol inside a television stand drawer in the living room. The firearm was loaded with .45 caliber ammunition. Agents also found my high capacity Glock magazine, which was also loaded with .45 caliber ammunition, along with some additional rounds of .45 caliber ammunition, in my bedroom nightstand.
>
> I agree that my Glock and a total of 63 rounds of .45 caliber ammunition found at my residence had previously been shipped or transported in interstate or foreign commerce.
>
> At the time I possessed the Glock firearm and ammunition on October 2, 2016, I had previously been convicted of: 1) Misconduct Involving Weapons on September 17, 2007 in Maricopa County Superior Court, Cause No. CR2005-013728; 2) Possession of Narcotic Drugs for Sale on September 17, 2007 in Maricopa County Superior Court, Cause No. CR 2006-120278; and 3) Possession of Narcotic Drugs for Sale on September 17, 2007 in Maricopa County Superior Court, Cause No. CR2007-142631, which are all crimes punishable by a term of imprisonment exceeding one year.

(*Id*. at 6). Pursuant to U.S. Sentencing Guidelines Manual § 1E1.1(a), the Government agreed to recommend a two-level reduction in the applicable sentencing guideline offense level as to Count Nine. (*Id.* at 2). Because the Defendant had an offense level of 16 or more, the Government agreed to move for an additional one-level reduction. (*Id.*) The parties did not reach an agreement on whether the sentences for Counts Two and Nine would run consecutively, concurrently, or partially concurrently. (*Id*. at 3).

On July 11, 2018, this Court committed the Defendant to the custody of the Bureau of Prisons ("BOP") for eighty-four months on Count Two and eighty-four months on Count Nine, to be served concurrently. (Doc. 458). He was also ordered upon release to serve four years on supervised release for Count Two and three years on Count Nine, to run concurrently. (*Id*.)

After his initial arrest on October 2, 2016, the Defendant was detained as a flight

risk due to his criminal history. (Doc. 59; Doc. 15 in 2:16-CR-01227). Thus, he received credit for 647 days served, beginning on that date, for his BOP custody term. As of the date of this Order, he has spent just over fifty-two months in federal custody. His projected release date is September 19, 2022, and he is currently housed at Federal Correctional Institution ("FCI") Big Spring in Howard County, Texas.

The Defendant brings his Motion for Compassionate Release due to the COVID-19 pandemic, arguing that his health conditions and the 18 U.S.C. § 3553(a) factors satisfy the requirements of extraordinary and compelling reasons for his release.

## II. Legal Standards

### a. Exhaustion of Administrative Remedies

The Defendant brings his Motion pursuant to 18 U.S.C. § 3582(c)(1)(A), recently modified by the First Step Act of 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194, 5238, § 603(b). That statute provides that a district court "may not modify a term of imprisonment once it has been imposed" unless the congressionally mandated exception is present. 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). That exception is present when the motion to modify sentence is brought by the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A). Alternatively, the exception is present when the motion is brought by the defendant, "after the defendant has fully exhausted all administrative rights to appeal," or after thirty days have elapsed since the prison warden receives the defendant's request to file a motion, whichever is earlier. *Id.* The statutory language is unambiguous and not waivable. *See United States v. Weidenhamer*, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("If the statutory language contains 'mandatory language . . . a court may not excuse a failure to exhaust.'") (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)). Thus, the Court may not consider a defendant's motion without proof that he meets this exhaustion requirement.

### b. Extraordinary and Compelling Reasons

If a defendant has exhausted his administrative remedies, he may bring a motion to the district court that extraordinary and compelling reasons nonetheless warrant his release.

The First Step Act references the Sentencing Commission's policy statement for what should be considered an extraordinary and compelling reason. The Sentencing Guidelines Manual defines "extraordinary and compelling reasons" for compassionate release. Reasons include (1) the defendant's serious illness or medical condition that "substantially diminishes" the defendant's ability to care for himself and from which he is "not expected to recover"; (2) if the defendant is at least 65, is experiencing physical or mental health problems due to his advanced age, and has served at least ten years (or seventy-five percent) of his term of imprisonment; (3) the death or incapacitation of certain family members; and (4) other reasons as determined by the Director of the BOP. *See* U.S.S.G. § 1B1.13 cmt. n.1. The Commission has not altered its guidance since the First Step Act was amended; thus, courts may independently determine whether such other reasons are present on a case-by-case basis, without deference to the BOP. *See United States v. Carter*, 469 F. Supp. 3d 583, 589 nn.3–4 (S.D. W. Va. 2020) (citations omitted).

### c. Section 3553(a) Factors

In considering motions for compassionate release, the Court must also "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013); 18 U.S.C. § 3553(a). A court should not grant a sentence reduction unless it determines that the defendant is not a danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2); *see also United States v. Baye*, 464 F. Supp. 3d 1178, 1190 (D. Nev. 2020) ("[C]ompassionate release is only appropriate where a defendant is not a danger to the community . . . ."). Therefore, the Court must find both extraordinary and compelling reasons for compassionate release *and* that the 3553(a)

factors support such release. *See United States v. Ruelas*, 2020 WL 5645093, at *2 (D. Ariz. Sept. 22, 2020) (citations omitted).

### III. Analysis

#### a. Exhaustion of Remedies

The parties agree, as does the Court, that the Defendant has exhausted his administrative remedies. The Defendant submitted a request for compassionate release to the FCI Big Spring warden on July 23, 2020. (Doc. 528, Ex. 1, at 22). After the BOP did not respond, the Defendant's attorney forwarded another request to the warden on November 2. (Doc. 535 at 3). On December 11, after more than thirty days had passed, the warden replied, writing that the Defendant was ineligible for compassionate release and home confinement. (Doc. 538-1 at 2–3). Therefore, due to the lapse of thirty days and the warden's ensuing denial, the Court finds that the Defendant has exhausted his administrative remedies.

#### b. Extraordinary and Compelling Reasons

The Defendant, a fifty-six-year-old man, claims that his various health conditions, including being a former smoker and having a high body mass index ("BMI"), meet the "extraordinary and compelling" reasons warranting compassionate release. (Doc. 535 at 2, 7–9). He points to Centers for Disease Control and Prevention ("CDC") guidance that recognizes these factors as increasing a person's risk of serious harm from COVID-19. (Doc. 535 at 7–8). The CDC recognizes that "[b]eing a current or former cigarette smoker increases your risk of severe illness from COVID-19."[1] Likewise, individuals who are obese, with a BMI of greater than 30 kg/m$^2$ but less than 40 kg/m$^2$, have an increased "risk of severe illness from COVID-19."[2] The Defendant's other stated health issue (high

---

[1] *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021); *Evidence Used To Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last updated Nov. 2, 2020).

[2] *People with Certain Medical Conditions*, *supra*; *Evidence Used To Update the List*, *supra*. The Government concedes that the Defendant is obese. (Doc. 538 at 6 n.1).

- 5 -

cholesterol) is not listed as a medical condition or risk for COVID-19. It is the Government's view that these health conditions, combined with the ongoing COVID-19 pandemic, are an "extraordinary and compelling" reason making the Defendant statutorily eligible for compassionate release. (Doc. 538 at 5–6).

The Defendant "has already contracted and survived" COVID-19. (Doc. 535 at 5). While at this time little is known about the potential for COVID-19 reinfection, COVID-19 survivors likely have some amount of limited-duration immunity to the virus.[3] At FCI Big Spring, which currently houses 1,000 inmates, 6 inmates and 11 staff members currently have COVID-19, 3 inmates have died of COVID-19, and 787 inmates have recovered from COVID-19.[4] Accounting for inmates entering and exiting confinement, along with the potential for slight data errors, it is clear that the vast majority of inmates at FCI Big Spring have already contracted COVID-19 and survived, which indicates that some level of herd immunity may be present within the population there.[5] Furthermore, the BOP is in the process of vaccinating both staff and inmates, though it has not yet begun doing so at FCI Big Spring.[6] Based on BOP vaccine guidance and due to the Defendant's health issues, he will likely be at a higher priority to receive the vaccine when vaccinations begin at FCI Big Spring.[7]

---

[3] *See Coronavirus Disease (COVID-19): Herd Immunity, Lockdowns and COVID-19*, World Health Org., https://www.who.int/news-room/q-a-detail/herd-immunity-lockdowns-and-covid-19 (last updated Dec. 31, 2020).

[4] *See FCI Big Spring*, https://www.bop.gov/locations/institutions/big/ (last visited Feb. 9, 2021); *Graphing COVID Cases in the BOP*, Univ. of Iowa Coll. of L, https://law.uiowa.edu/compassionate-release-work (click "COVID Cases By Institution" hyperlinks to download Microsoft Excel data) (last updated Feb. 5, 2021).

[5] *See* Richard Harris, *A Rocky Road on the Way to Herd Immunity for COVID-19*, NPR (Feb. 3, 2021, 5:16 AM), https://www.npr.org/sections/health-shots/2021/02/03/963373971/a-rocky-road-on-the-way-to-herd-immunity-for-covid-19 ("Scientists estimate that somewhere between 70% and 85% of people need to be immune from the coronavirus before . . . herd immunity [is reached].").

[6] *See COVID-19 Vaccine Implementation*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (indicating that across all facilities, BOP has administered 45,577 doses of the COVID-19 vaccine to inmates and staff) (last visited Feb. 11, 2021).

[7] Per the BOP's guidance, Defendant will likely be categorized as Priority Level 2 as a former smoker. *See Federal Bureau of Prisons Clinical Guidance: COVID-19 Vaccine Guidance*, at 6 (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Otherwise, he will likely be categorized as a Priority Level 3 due to his age. *See id.*

The Government asserts that given the high rates of COVID-19 transmission occurring in Maricopa County, there is no evidence that the Defendant will not be exposed to the virus if he is released. *See* (Doc. 538 at 9). This point is not overlooked. Although the Court recognizes that the infection of any inmate is concerning, a general fear of contracting COVID-19 is insufficient legal cause for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Having considered the Defendant's age, his specific health concerns, the risk of COVID-19 infection, and the guidance set forth in U.S.S.G. § 1B1.13, the Court disagrees with the parties' stipulation that the Defendant has demonstrated extraordinary and compelling reasons to be released. The Sentencing Guidelines Manual's definition of "serious physical . . . condition" only includes a condition that "substantially diminishes" the defendant's ability to care for himself and from which he is "not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1. While obesity and a former smoking habit are conditions that lead to an increased risk of severe COVID-19 infection, they are not alleged to substantially diminish the Defendant's ability to care for himself while in confinement. Thus, they are not serious physical conditions as contemplated by the Sentencing Guidelines Manual. Despite this fact, the Court will address the § 3553(a) factors and whether the Defendant poses a danger to any person or the community.

### c. Section 3553(a) Factors

The Defendant states that his offenses were minor, that he has "no interest in future criminal activity," and that he has had no inmate violations while incarcerated. (*See* Doc. 535 at 11). He further states that he has a supportive wife of twenty-five years, a place to reside upon his release, and "several job opportunities" awaiting him. (*Id*. at 5; Doc. 528 at 19). Thus, he argues that he is not a danger to anyone. The Government disagrees with his conclusion.

The Government asserts that the Defendant's conduct in trafficking marijuana and possessing a firearm with a high-capacity magazine put the public at risk. (Doc. 538 at 7). It points out that the Defendant was a documented gang member with an extensive criminal

- 7 -

career from 1985 to 2016, a career that included convictions for assault, selling drugs, and several burglaries. (*Id.* at 7–8). And the Government argues that the Defendant was also involved in drug robberies and acquiring drugs from out of state prior to his arrest for the present offenses. (*Id.* at 7). Finally, the Government notes that the Defendant committed the present offenses shortly after being released from prison. (*Id.* at 8).

The Defendant was sentenced by this Court approximately thirty-one months ago. Therefore, the Court's consideration of his 3553(a) sentencing factors remain the same. The Defendant's final adjusted sentencing guideline range was ninety-two to one hundred fifteen months. (Doc. 459 at 1). The Court imposed a sentence below the low end of his sentencing guideline range—a slight downward variance to avoid unwarranted sentencing disparities among the Defendant and his co-defendants. (*Id.* at 3). At sentencing, however, the Court noted that the Defendant had committed drug felonies while in his forties. The Court also expressed concern about how quickly the Defendant returned to selling drugs after being incarcerated for seven-and-a-half years for similar drug felonies. Additionally, the Court noted the Defendant's substance abuse issues and his need for treatment. Ultimately, the Court determined that a deterrent sentence was needed.

Consequently, given that the Defendant has only served fifty-two months of an eighty-four-month sentence, the 3553(a) factors remain substantially the same. Based on the Defendant's criminal history, his resistance to the deterrent effect of incarceration, and the potential risk to the community if he were released early, the Court finds that the Defendant does not meet the criteria for compassionate release. Accordingly,

**IT IS ORDERED** denying the Defendant's Amended Motion for Compassionate Release. (Doc. 535).

Dated this 18th day of March, 2021.

Honorable Diane J. Humetewa
United States District Judge